| | | |
|---|---|---|
| BRIAN K. LEWIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on initial review of the Amended Complaint, (Doc. No. 12), which the Court construes as incorporating a motion for mandatory preliminary injunctive relief on behalf of each Plaintiff, the Attorney General's Response to an Order to show cause why preliminary injunctive relief should not be granted, (Doc. Nos. 39), and Plaintiff Lewis' motions for an extension of time and for discovery, (Doc. Nos. 43, 44).

## I.    BACKGROUND

*Pro se* Plaintiffs Brian K. Lewis and Jamie R. Spake have filed a civil rights suit pursuant to 42 U.S.C. § 1983 alleging that they are being denied treatment with "breakthrough" drugs[1] to treat their Hepatitis-C virus infections in violation of their constitutional rights, for discriminating against them on the basis of their Hepatitis-C virus infections pursuant to the Americans with Disabilities Act ("ADA"), and Rehabilitation Act ("RA"), and for violating their rights under the

---

[1] Harvoni, which treats Hepatitis-C genotype-1, was approved by the FDA in October 2014, (Doc. No. 39-1 at 1), and Epclusa, which treats the other Hepatitis-C genotypes, was approved by the FDA in June 2016, (Doc. No. 39-1 at 2). A single dose of Harvoni and Epclusa costs $558.83 and $886.86, respectively, with 12-week courses of treatment totaling $46,941.77 and $74,496.24. Id.

1

North Carolina Constitution.[2] They name as Defendants: The North Carolina Department of Public Safety/Division of Prisons ("NC DPS/DOP"); DPS Commissioner David W. Guice; DPS Secretary Frank L. Perry; DPS Medical Director Paula Y. Smith; DPS Western Regional Medical Director Sandra Pittman; Mountain View Correctional Institution Lead Nurse Norma Melton; Mountain View C.I. Administrator Mike Slagle; Avery Mitchell C.I. Administrator Mike Ball; Mountain View and Avery Mitchell C.I. employee Robert Uhren, M.D.; Mountain View and Avery Mitchell C.I. employee Keith C. D'Amico, P.A.; and "John Doe and Jane Doe A-Z." (Doc. No. 12 at 2).

Construing the Amended Complaint liberally and accepting the allegations as true for purposes of initial review, Plaintiffs are both Hepatitis-C positive inmates who were incarcerated at the Mountain View C.I. when they filed the lawsuit, and they both claim to have serious health complications stemming from their infection with the Hepatitis-C virus. "Breakthrough" oral prescription drugs became available in 2014, and they are the prevailing medical standard of care to cure Hepatitis-C viral infection. DPS DOP Health Services systematically denies these necessary breakthrough prescription drug treatments to Hepatitis-C infected inmates for non-medical reasons. DPS policy and procedures have allowed Defendants to turn a blind eye to Plaintiffs' serious medical needs, with knowledge that their actions would cause Plaintiffs' mental and physical health including cirrhosis, irreversible liver damage, and death. This exposes Plaintiffs to a high probability that the infection will cause severe physical and mental deterioration, great pain and suffering, severe illness, and inevitably death. DPS policy creation and implementation manifest willful, callous, and deliberate indifference to Plaintiffs' serious

---

[2] Plaintiffs' allegations on behalf of others, including purported class members, have been omitted from this Section because Plaintiffs have been denied class certification and are unable to seek relief on behalf of others. See Section V(1), *infra*.

medical needs of Hepatitis-C infection, in violation of the United States Constitution, as well as the Americans with Disabilities Act, the Rehabilitation Act, and the North Carolina Constitution.

Defendant **Guice**, as DPS Commissioner, is responsible for policy and procedure, administration, and supervision of staff and employees.

Defendant **Perry**, as DPS Secretary, is responsible for all oversight, operation, and administration of the DPS, including providing appropriate medical treatment and the formulation of policy and procedure to ensure Plaintiffs' treatment.

Defendant **Smith** is the DPS Medical Director, serves on the Utilization Review Board, and oversees delivery of all medical services to the NC DOP. She is responsible for establishing medical policy and procedure that governs medical treatment of all inmates within the NC DOP.

Defendant **Pittman** is the DPS Regional Medical Director, and is responsible for supervising and monitoring delivery of all medical and dental care services throughout Western District of North Caroilna at a level consistent with community standards.

Defendant **Melton** is the Mountain View C.I. lead nurse who is responsible for supervising and monitoring delivery of all medical and dental care services within Mountain View C.I., at a level consistent with community standards.

Since 2012, Defendants **Smith, Pittman,** and **Melton**, have denied and continue to deny treatment which is the professional medical community standard of care to cure Hepatitis-C viral infection and relieve the effects of end stage liver disease and chronic liver failure. Since June 2012, Defendants Smith, Pittman, and Melton have denied and continue to deny necessary medical follow-up to track and halt the emotional and painful effects of end stage liver disease and chronic liver failure including regular blood work, ultrasound, and CT scans which are medically necessary for individuals with Hepatitis-C virus. Defendants Smith, Pittman, and Melton refused with

deliberate indifference to provide Plaintiff Spake with access to be seen or evaluated by a hepatologist or gastroenterologist for proper treatment of the Hepatitis-C virus.

Defendants **Uhren** and **D'Amico** are the primary medical providers for DPS/DOP health services. They are both treating physicians who provide medical care at Mountain View and Avery Mitchell C.I. they have an obligation to provide independent, individual, safe, effective medical care to each Plaintiff consistent with the community standard of medical care. They were deliberately indifferent for refusing to treat Plaintiffs' disability and disease and serious medical need of Hepatitis-C infection in compliance with the current standards of individualized professional medical care. Since 2012, Defendants Uhren and D'Amico have denied and continue to deny treatment which is the professional medical community standard of care to cure Hepatitis-C viral infection and relieve the effects of end stage liver disease and chronic liver failure. Since June 2012, Defendants Uhren and D'Amico have denied and continue to deny necessary medical follow-up to track and halt the emotional and painful effects of end stage liver disease and chronic liver failure including regular blood work, ultrasound, and CT scans which are medically necessary for individuals with Hepatitis-C virus. Defendants Uhren and D'Amico refused with deliberate indifference to provide Plaintiff Spake with access to be seen or evaluated by a hepatologist or gastroenterologist for proper treatment of Hepatitis-C virus.

Defendant **Slagle** is the administrator who is responsible for supervising and monitoring the delivery of all medical and dental care services at Mountain View C.I., that must be provided at a level consistent with community standards.

Defendant **Ball** is the administrator responsible for supervising and monitoring the delivery of all medical and dental care services at Avery Mitchell C.I., that must be provided at a level consistent with community standards.

A June 2011 needle liver biopsy revealed that Plaintiff **Spake** suffers from "End Stage Liver Disease (Stage 4) due to HCV Infection Virus." (Doc. No. 12 at 24). On June 14, 2012, Plaintiff Spake was sentenced to 20 months' imprisonment at the North Carolina DPS and, immediately after sentencing, he lapsed into a hepatic encephoalopathy coma that was, upon belief, directly caused by his liver disease. Id. Plaintiff Spake was transferred from County jail to Salisbury C.I. infirmary. Due to his "delirium" and "fatal condition," Plaintiff Spake was moved without justification to segregation. (Doc. No. 12 at 24-25). His condition finally improved enough to be transferred to Avery Mitchell C.I. where he immediately began seeking treatment for his Hepatitis-C and end stage liver disease through sick calls and grievances. He was repeatedly denied treatment by Defendants Uhren and D'Amico, "quoting Policy and Procedure," and telling him that, even if he was in a life-threatening condition due to his end-stage liver disease, they were "unable to treat his HCV Virus Infection per policy and procedure." (Doc. No. 12 at 25). Plaintiff Spake was released from custody in March 2014.

On September 27, 2015, Plaintiff Spake was again remanded to DPS to serve a 35-54 month sentence. (Doc. No. 12 at 26). Plaintiff Spake mentioned his medical issues at sentencing and the judge ordered "the benefit of any educational [or] vocational opportunities or needed medical treatments, given his condition" and that Plaintiff Spake "be the recipient of any treatment that might help him, whatever that may be." (Doc. No. 12 at 26). Despite the judge's order, "no treatment of any kind has been provided" as of the date the Amended Complaint was filed on March 4, 2016. Id.

While incarcerated, Plaintiff Spake has diligently requested Hepatitis-C treatment, routine blood work and monitoring, and he has been repeatedly denied for non-medical reasons, *i.e.*, "Policy and Procedure." (Doc. No. 12 at 28).

Denial of treatment has caused Plaintiff Spake substantial physical and mental deterioration including "irreversible liver damage which has manifested into liver cancer, liver failure and inevitably will cause their deaths, and this damage can be determined for trial." (Doc. No. 12 at 3). This irreversible damage and deterioration would not have been as severe had breakthrough drugs been provided to Plaintiffs at the onset of their availability. As a direct result of Defendants' deliberate indifference, Plaintiff Spake's condition continues to deteriorate, causing him great suffering and emotional and physical pain directly caused by the Hepatitis-C virus, which will inevitably lead to his death. Medical treatment for Plaintiff Spake's Hepatitis-C infection is urgent due to his advanced end-stage liver disease and liver deterioration; once his liver decompensates the only available treatment will be liver transplant. (Doc. No. 12 at 29).

Plaintiff **Lewis** was sentenced to 200 months' imprisonment on December 10, 2008. He was not tested for Hepatitis-C at processing but requested a Hepatitis-C test on September 11, 2009, due to unexplained weakness and skin rashes. Plaintiff Lewis tested positive for Hepatitis-c virus genotype 1-A with a viral load of 2,313,630. (Doc. No. 12 at 29). In May 2010, Plaintiff Lewis began a 48-week course of "toxic" Interferon injections and Ribavirin treatment, the side-effects of which were emotionally and physically "devastating." (Doc. No. 12 at 30). Within 10 weeks, the treatment was deemed unsuccessful and was terminated. Plaintiff Lewis' viral load was 5,250,090 on July 14, 2010.

On September 26, 2012, Plaintiff Lewis had an abdominal ultrasound due to unexplained pain. He was diagnosed with pancreatitis and liver inflammation that impairs the body's ability to digest essential nutrients and filter toxins from the blood to prevent infections. In March 2013, Plaintiff Lewis had a U.R.-approved scheduled appointment with Dr. Thomas Nuzum at UNC Chapel Hill but the appointment was withdrawn for undocumented reasons. Plaintiff Lewis asked

why the appointment was cancelled but he never received a response. Plaintiff Lewis submitted sick calls on November 26, 2014 and December 19, 2014, asking about his treatment plan for Hepatitis-C. In late December 2014, Plaintiff Lewis saw Dr. Byrd at Maury C.I., who looked at the records and saw no documented reason for the withdrawal of the March 5, 2013, appointment with Dr. Nuzum. She said that the treatment plan must have "fallen through the cracks," and received approval for another appointment with Dr. Nuzum in March 2015. (Doc. No. 12 at 31).

On January 29, 2015, Plaintiff Lewis was shipped from Mountain View C.I., where his appointment with Dr. Nuzum was again withdrawn for undocumented reasons. Plaintiff Lewis submitted sick calls to find out about the cancellation and his treatment plan on March 22, 2015. He was notified by Defendants Uhren, D'Amico, and "medical employees" that there was "no treatment available" for Hepatitis-C virus. (Doc. No. 12 at 31). Plaintiff Lewis diligently requested the new breakthrough drugs since he found out about them and they have been repeatedly refused for non-medical reasons.

The denial of the standard of care treatment has caused Plaintiffs physical and emotional pain and suffering and deterioration. (Doc. No. 12 at 32).

Plaintiffs seek mandatory preliminary injunctive relief;[3] permanent injunctive relief;[4] declaratory judgment; compensatory, nominal, and punitive damages; prejudgment interest and

---

[3] Only Plaintiffs' request for immediate medical treatment is construed as a motion for mandatory preliminary injunction.

[4] Specifically, Plaintiffs ask the Court to order Defendants to formulate and implement a new policy and procedure evaluating and treating all Hepatitis-C infected inmates with clinical guidelines comparable to that offered in the Federal Bureau of Prisons ("BOP"); ongoing monitoring and medical care for fibrosis, cirrhosis, and liver cancer, with direct access to a hepatologist regarding the need for partial or full liver transplant; cease treating inmates with "toxic" interferon injections; stop withholding breakthrough drug treatment until cirrhosis irreversibly manifests; start testing all new inmates for Hepatitis-C on intake, regardless of custody level; start immediately screening all North Carolina inmates who have not been tested for Hepatitis-C; immediately commence 12-week oral antiviral drugs Harvoni or Viekera-Pak to stop imminent danger of deteriorating liver condition. (Doc. No. 12 at 53-55).

post-verdict interest; all costs; reasonable attorney's fees; and all other relief that the Court deems just and proper.

## II.      MANDATORY PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008) (citing <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90 (2008)). A preliminary injunction is a remedy that is "'granted only sparingly and in limited circumstances.'" <u>Micro Strategy, Inc. v. Motorola, Inc.</u>, 245 F.3d 335, 339 (4th Cir. 2001) (quoting <u>Direx Israel, Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 816 (4th Cir. 1991)).

To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. <u>DiBiase v. SPX Corp.</u>, 872 F.3d 224, 230 (4th Cir. 2017) (quoting <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008)).

The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. <u>See</u> <u>Pashby v. Delia</u>, 709 F.3d 307, 319 (4th Cir. 2013). By contrast, a mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." <u>Taylor v. Freeman</u>, 34 F.3d 266, 270 n. 2 (4th Cir. 1994) (quoting <u>Martinez v. Matthews</u>, 544 F.2d 1233, 1243 (5th Cir. 1976)). A mandatory injunction is warranted in only the most extraordinary circumstances. <u>Id.</u> (citing <u>Wetzel v. Edwards</u>, 635 F.2d 283, 286 (4th Cir. 1980)). Further, it is well established that "absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such

facilities." <u>Taylor</u>, 34 F.3d at 268; <u>see</u> <u>Rogers v. Scurr</u>, 676 F.2d 1211, 1214 (8th Cir. 1982) ("judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

Incorporated in the Amended Complaint is a motion for mandatory preliminary injunctive relief for the immediate provision of the breakthrough Hepatitis-C drugs to both Plaintiffs. Plaintiffs claim that they are in imminent danger due to continuing deterioration of their physical condition due to their untreated Hepatitis-C virus infections. They seek orders compelling Defendants to treat them with oral antiviral Harvoni or Viekera-Pak prescription drugs.

The Court ordered the North Carolina Attorney General to show cause why preliminary injunctive relief should not be granted in light of the allegedly urgent and serious nature of the Plaintiff's medical conditions. (Doc. No. 38).

The Attorney General filed a Response arguing that Plaintiffs' motions for preliminary injunction should be denied. (Doc. No. 39). As to Plaintiff Spake, the Attorney General argues that the motion is moot because he was provided Harvoni medication which has cured him of his Hepatitis-C infection, and he has now been released from DPS custody. As to Lewis, the Attorney General argue that a preliminary injunction should be denied because Lewis now has level F3 liver scarring which gives him priority treatment under DPS's guidelines, he now has multiple genotypes which makes him a suitable candidate for Epclusa, and Dr. Smith has personally authorized him for referral to hepatology clinic for consideration of a prescription coursed of Epclusa. <u>See</u> (Doc. No. 39-1). The Attorney General further argues that there is no likelihood of success on the merits because Plaintiff Lewis was scheduled for evaluation by a specialist by the end of October, 2017, who will either approve him or conclude he does not yet qualify for the treatment. (Doc. No. 39-1 at 5). It is highly unlikely that Plaintiff Lewis will suffer irreparable

harm absent an injunction because he now meets DPS criteria for treatment and he will receive the treatment he is requesting without court intervention. Further, hardship does not tip in Plaintiff Lewis' favor because Dr. Smith's efforts to refer him for expedited evaluation deprive him of any hardship requiring extraordinary relief. Injunction is not in the public interest in light of the cost DPS would incur with a 12-week course of treatment with Epclusa, and further, intervention by the court into medical decisions of DPS and expert specialist the agency makes available for inmates and a mandate of particular care, especially if not deemed warranted by the hepatologist, which would be contrary to the public interest.

Plaintiff Lewis filed a reply arguing, *inter alia*, that the Attorney General has failed to give a specific justifiable reason why the injunction orders requested should not be granted. (Doc. No. 42). He subsequently filed a "Statement of Facts…" appending a grievance indicating that, on November 11, 2017, the Utilization Review Board deferred Plaintiff Lewis' request for Epclusa on November 16, 2017, because he "Does not meet criteria." (Doc. No. 45 at 6). On November 22, 2017, Plaintiff filed an Administrative Remedy Procedure at Nash C.I. alleging that Dr. Coleman and Nash C.I. medical have "downgraded" his condition without just cause and without ordering a sonogram contrary to the recommendations of Dr. Nuzum, Dr. Uhren and Dr. Smith, and is denying medical treatment for non-medical reasons (Doc. No. 46 at 4).

Plaintiff Spake's motion for a mandatory preliminary injunction is moot because he has been provided with drug treatment which have cured him of Hepatitis-C virus, and further, he has been released from DPS custody. (Doc. No. 39-1 at 3-12); see, e.g., Neely v. Ortiz, 241 Fed. Appx. 474 (10th Cir. 2007) (inmate's request for injunctive relief was moot where the prison provided the medical treatment plaintiff sought before the court ruled on his request).

Plaintiff Lewis' motion for mandatory preliminary injunction is denied. First, he has failed

to demonstrate that he is likely to succeed on the merits. Plaintiff Lewis is not entitled to a particular course of medical treatment or the treatment of his choice. See Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977) (the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*."); see, e.g., Zuniga v. University Health System, 71 Fed. Appx. 293 (5th Cir. 2003) (denying state inmate's motion for preliminary injunction was not abuse of discretion where inmate submitted no medical opinion showing that he would suffer irreparable harm if not provided with orthopedic shoes, and his conclusional allegation of irreparable harm was insufficient to show that the court abused its discretion by denying injunctive relief); Phelps v. Wexford Health Sources, Inc., 2017 WL 528424 at *4 (D. Md. Feb. 8, 2017) (denying emergency injunction where plaintiff's motion did not demonstrate the likelihood of success on the merits because he is not entitled to a particular course of medical treatment or to Harvoni, the treatment of his choice, and the medical defendants refuted plaintiff's assertions that he is likely to suffer irreparable harm in the absence of preliminary relief).

Second, Plaintiff Lewis has failed to demonstrate that he is likely to suffer irreparable harm in the absence of preliminary relief. It is undisputed that Plaintiff Lewis is infected with the Hepatitis-C virus. He has provided his own layman's conclusion that his condition will continue to deteriorate without immediate "breakthrough" drug treatment. See, e.g., Zuniga, 71 Fed. Appx. at 293. The Court declines to interfere with DPS medical decision-making based on Plaintiff's conclusory claim.

Third, the balance of equities do not tip in Plaintiff Lewis' favor. Although DPS now agrees that Plaintiff Lewis qualifies to be considered for prescription drug treatment, the Utilization Review Board apparently disagrees and has deferred his request. Plaintiff Lewis essentially asks

that the Court to replace the Utilization Review Board's judgment with its own with regards to whether, and when, Plaintiff Lewis should be provided costly prescription drug treatment for his Hepatitis-C infection. The Court declines to interfere with DPS's medical decision-making in this case. See generally Taylor, 34 F.3d at 268; Rogers, 676 F.2d at 1214.

Finally, an injunction is not in the public interest. A mandatory preliminary injunction is a drastic remedy and, in this case, would invade DPS' administrative and medical decision-making. The public interest is not served by the Court's interference in this manner.

For these reasons, Plaintiff Lewis' request for mandatory preliminary injunctive relief is denied. **However, the Court respectfully asks that the Secretary of the Department of Corrections give serious consideration to the claims Plaintiff Lewis has articulated and consider providing him with treatment for his Hepatitis-C infection as soon as is practicable.**

### III.    PENDING MOTIONS

Plaintiff Lewis has filed motions for an extension of time and to engage in discovery. (Doc. Nos. 43, 44). These motions will be denied as moot because the Complaint has passed initial review on several claims as explained in Section IV, *infra*. Therefore, the Defendants will be served and Plaintiff Lewis will have the opportunity to engage in discovery, file dispositive motions, and oppose any motions filed by Defendants.

### IV.    SCREENING STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory

or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## V. DISCUSSION

### (1) Claims on Behalf of Others

Plaintiffs' motion to certify a class has already been denied. (Doc. No. 32). Accordingly, their claims on behalf of others are dismissed. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (the Fourth Circuit does not certify a class where a *pro se* litigant will act as the representative of that class); see also Hafner v. Office of Thrift Supervision, 977 F.2d 572 (4th Cir. 1992) (holding that, because plaintiff is *pro se* and is not an attorney, although he filed pleadings purporting to represent a group, he is "barred from representing anyone other than himself.")(unpublished).

Moreover, Plaintiffs do not have standing to assert claims on behalf of others. For instance, Plaintiffs argue that DPS should institute a screening policy for Hepatitis-C, and that DPS's failure to screen and provide breakthrough drug treatment to cure inmates presents a danger of reinfection to uninfected inmates as well as to the general public upon their release. Plaintiffs have failed to allege a "concrete and particularized" injury with regards to the foregoing and, therefore, lack standing to assert these claims. See Petrella v. Brownback, 697 F.3d 1285, 1293 (10th Cir.2012) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).

Therefore, to the extent the Amended Complaint seeks relief on behalf of individuals other than Plaintiffs Lewis and Spake, these claims are dismissed.

**(2)** **North Carolina Division of Public Safety**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Thus, § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985); Alabama v. Pugh, 438 U.S. 781, 781 (1978); but

see Ex parte Young, 298 U.S. 155, 159-60 (1936) (suit against state officials in their official capacities for prospective equitable relief to remedy ongoing violations of federal law are not barred by the Eleventh Amendment).

The North Carolina Department of Corrections is not a "person" within the meaning of the State of North Carolina and shares the State's sovereign immunity. Bennett v. Reed, 534 F.Supp. 83, 85 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982). Therefore, suit against NC DPS is precluded and NC DPS is dismissed as a Defendant in this action.

**(3)     John and Jane Does**

John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case would not be permitted).

Plaintiff attempts to name as Defendants "all medical employees, contractors, and providers, directly or indirectly responsible for the denial of the readily available new 'break through' medical community 'standard of care,' 12 week, daily oral pill treatment for HCV infections." (Doc. No. 12 at 3).

Even if Plaintiff was able to identify the John and Jane Doe Defendants described in the

Amended Complaint, the claims against them would be subject to dismissal because they are too vague to state a claim. The Amended Complaint makes no attempt to individually identify the Doe Defendants, does not state a short and plain claim against any of them, and fails to explain how the Doe Defendants' actions, rather than DPS policy, has caused the deprivation of any right.

Therefore, the claims against the John and Jane Doe Defendants is dismissed.

### (4)    Deliberate Indifference

"[T]he Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials," and "forbids the unnecessary and wanton infliction of pain." Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013) (internal quotation marks omitted). Deliberate indifference to serious medical needs of prisoners "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted).

The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 241 (internal quotation marks omitted). An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) (deliberate-indifference standard requires prisoner to "produce evidence of a serious or significant physical or emotional injury resulting from the challenged

conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions" (citation omitted)). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

A mere delay or interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). In such cases, in addition to establishing that his medical need was objectively serious, a plaintiff also must show that the delay in providing medical care caused him to suffer "substantial harm." Webb v. Hamidullah, 281 Fed. Appx. 159, 166 (4th Cir. 2008).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

Plaintiffs argue that Defendants were deliberately indifferent to their life-threatening and painful medical conditions by refusing breakthrough drug therapy that has been the community

standard since 2014, for non-medical reasons. Defendants have jointly enforced the Health Service policy and procedure that contravenes clearly established Hepatitis-C professional medical community standard of care. Health Services policy and procedure requires Hepatitis-C positive inmates to develop cirrhosis or scarring even though breakthrough drugs are effective on all levels of infection, even though the medical community protocol does not differentiate among patients based on viral load, or the presence of fibrosis, cirrhosis, or liver cancer. Health Services policy and procedure differentiates among Hepatitis-C positive inmates and waits to treat them until they reach a set viral load, or manifest fibrosis, cirrhosis, or cancer which lacks a rational medical basis and demonstrates willful and callous deliberate indifference in violation of clearly established law. (Doc. No. 12 at 45-46). These actions place Plaintiffs in imminent danger of continuing deterioration, serious mental and physical pain, suffering, and death.

Plaintiffs have adequately alleged that their Hepatitis-C viral infections and attendant health consequences are serious medical needs. See generally Erickson v. Pardus, 551 U.S. 89 (2007) (granting certiorari and vacating judgment upon finding that prisoner's complaint alleging that termination of his treatment for Hepatitis-C was endangering his life was sufficient to state an Eighth Amendment deliberate indifference claim).

Plaintiffs have also adequately alleged that Defendants are deliberately indifferent by enacting and enforcing policies and procedures that have delayed needed treatment based on non-medical reasons, and are purposefully requiring Plaintiffs to incur irreversible and severe health complications before considering them for treatment.

These allegations state a facially sufficient claim of deliberate indifference to Plaintiffs' serious medical needs and this claim will be permitted to proceed.

18

**(5)**     **<u>Americans with Disabilities Act</u>**

To establish a *prima facie* case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. <u>See</u> <u>Constantine v. George Mason Univ.</u>, 411 F.3d 474, 498 (4th Cir. 2005); <u>Baird v. Rose</u>, 192 F.3d 462, 467 (4th Cir. 1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." <u>Miller v. Hinton</u>, 288 Fed. Appx. 901, 902 (4th Cir. 2008) (quoting <u>Bircoll v. Miami-Dade County</u>, 480 F.3d 1072, 1082 (11th Cir. 2007)).

Plaintiffs claim that Defendants discriminated against them, caused them to be excluded from participating in programs, and denied them access to services that are available to non-infected North Carolina prison system inmates at Mountain View and Avery Mitchell C.I.s. Plaintiffs may serve longer prison sentences because they are being denied gain-time available to other inmates. (Doc. No. 12 at 48). Plaintiff Spake alleges that he is in imminent danger of a longer sentence because he is being denied gain-time that is available to other inmates.

Plaintiffs have stated a facially sufficient claim of discrimination under the ADA and this claim will be permitted to proceed. <u>See</u> <u>generally</u> <u>Randolph v. Rodgers</u>, 170 F.3d 850, 857 (8th Cir. 1999) (holding that a deaf inmate stated a *prima facie* ADA violation by alleging that he did not receive the full benefits of participating in prison disciplinary and classification proceedings due

solely to his disability).

**(6)**     **Rehabilitation Act**

To establish a *prima facie* case under the RA, a plaintiff must prove that: (1) he has a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit "due to discrimination solely on the basis of the disability." Atkins v. Holder, 529 Fed. Appx. 318, 319-20 (4th Cir. 2013). The RA has a stricter causation requirement than the ADA in that the disability must be the sole cause, as opposed to one of multiple causes, of the discrimination. See Thomas v. Salvation Army S. Territory, 841 F.3d 632, 641 (4th Cir. 2016).

Plaintiffs allege that Defendants discriminated against them and caused them to be excluded from participating in programs and denied access to services in the North Carolina prison system, including access to federally funded programs, at Mountain View and Avery Mitchell C.I.s., due to their Hepatitis-C disabilities. This puts them in imminent danger of continuing deterioration, serious mental and physical pain, suffering, and death. (Doc. No. 12 at 49-50).

These allegations sufficiently state a claim under the RA which will be permitted to proceed. See generally Randolph, 170 F.3d at 858.

**(7)**     **Equal Protection**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.[5] The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger

---

[5] In addition to the Fourteenth Amendment, Plaintiffs cite the United States Constitution's Fifth Amendment in support of their equal protection argument, however, the Fifth Amendment contains no equal protection clause.

v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993). The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

Plaintiffs argue that Defendants are violating equal protection by screening and treating Hepatitis-C in a significantly different manner than it screens and treats HIV/AIDS in North Carolina prisons without a rational medical justification for doing so. Health Services policy and procedure require significant cirrhosis when the new breakthrough treatments are equally effective for patients of all levels of infection. Therefore, Defendants should not be differentiating among

Hepatitis-C patients with respect to their viral load, and the presence of cirrhosis, fibrosis, and liver cancer. The Health Services policy and procedure allowing for differential treatment of Hepatitis-C positive inmates, waiting to treat them until they reach a certain viral load or manifest fibrosis, cirrhosis, or liver cancer, lacks a rational basis under prevailing science and medical standards and clearly established law. The policy places Plaintiffs in imminent danger of continuing deterioration, serious mental and physical pain and suffering, and inevitably death. (Doc. No. 12 at 44-45).

To make out an equal protection violation, Plaintiffs would have to allege that they were being treated differently from other similarly situated – *i.e.* Hepatitis-C positive – inmates. Comparing themselves to HIV-infected inmates is unavailing because HIV and Hepatitis-C infected inmates suffer from distinct viruses and are not similarly situated. Plaintiffs have failed to allege they are being treated differently from *similarly situated* individuals, and therefore, they have failed to state an equal protection claim.

**(8)   State Law Claims**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

Plaintiffs seek relief under North Carolina Constitution Article 1, Section 27, which

prohibits cruel and unusual punishment, and Article 1, Sections 1, 2, 3, and Article 4, Section 13(1), which provide legal remedies. He claims that Defendants jointly contravened the clearly established professional medical community standard of care for treating inmates infected with Hepatitis-C by refusing to treat them until they reach a certain viral load or manifest cirrhosis, scarring, fibrosis, or liver cancer. This lacks a rational medical basis and demonstrates willful, callous, deliberate indifference for non-medical reasons. Plaintiffs' continuing deterioration establishes a violation of the North Carolina Constitution which provides for declaratory, injunctive, equitable and other remedies. Plaintiffs claim that they are in imminent danger of continuing deterioration, serious mental and physical pain, suffering, and death. (Doc. No. 12 at 47).

Plaintiffs' federal deliberate indifference claims are being permitted to proceed, and the North Carolina claims are not novel, complex, or substantially predominate the case. Therefore, the Court will exercise supplemental jurisdiction and allow the North Carolina claims to proceed at this time.

## VI. CONCLUSION

The Amended Compliant will be permitted to proceed on Plaintiff's claims of deliberate indifference to a serious medical need, violation of the ADA, violation of the Rehabilitation Act, and State law claims. The Amended Compliant is dismissed insofar as Plaintiffs Lewis and Spake attempt to obtain relief on behalf of others, against the NC DPS, and against John and Jane Doe Defendants. The Amended Complaint's motion for mandatory preliminary injunction for immediate provision of "breakthrough" drug treatment is denied as to Plaintiff Lewis and is denied as moot with regards to Plaintiff Spake. Plaintiff Lewis' motions for extension of time and for discovery are denied as moot.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiffs' claims of deliberate indifference, violations of the ADA and RA survive initial review under 28 U.S.C. § 1915, and the Court will exercise supplemental jurisdiction over Plaintiffs' State law claims.

2. Plaintiffs' claims on behalf of others, claims against the North Carolina Department of Public Safety, and claims against John and Jane Doe Defendants are dismissed.

3. Plaintiff Spake's motion for mandatory preliminary injunction that is incorporated in the Amended Complaint is **DENIED** as moot.

4. Plaintiff Lewis' motion for mandatory preliminary injunction that is incorporated in the Amended Complaint is **DENIED**.

5. Plaintiff Lewis' motions for extension of time and for discovery, (Doc. Nos. 43, 44), are denied as moot.

6. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiffs for Plaintiffs to fill out and return for service of process on Defendants **David W. Guice, Frank L. Perry, Paula Y. Smith, Sandra Pittman, Norma Melton, Mike Slagle, Mike Ball, Robert Uhren,** and **Keith C. D'Amico**.  Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the form has been mailed to Plaintiffs.

Signed: January 4, 2018

Frank D. Whitney
Chief United States District Judge

24